IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARTHUR L. STONE | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JEH JOHNSON, Secretary of Homeland Security | : : | NO. 13-3765 |

MEMORANDUM

Dalzell, J.                                                                                               July 25, 2016

## I.    Introduction

We consider here defendant Jeh Johnson's ("the Government") motion for summary judgment.  Plaintiff Arthur L. Stone brings this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e) et seq., asserting a claim of retaliation.  Specifically, Stone asserts that the Transportation Security Agency ("TSA") retaliated against him when it refused to restore him to his position as a federal air marshal after he appealed his initial dismissal.

We have jurisdiction over Stone's Title VII claim pursuant to 28 U.S.C. § 1331.

The Government moves for summary judgment averring that (1) the record fails to support Stone's claim that he was a victim of retaliation when the Transportation Security Agency ("TSA") refused to restore him to his former position as a federal air marshal, and (2) in any event, Stone is judicially estopped from asserting this claim.  For the reasons set forth below, we will grant the Government's motion.

## II.   Legal Standard

Parties may move for summary judgment pursuant to Fed. R. Civ. P. 56(a) on any claim or defense in the case, and the "court shall grant summary judgment if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id.

A party moving for summary judgment bears the initial burden of informing the district court of the basis for its argument that there is no genuine issue of material fact by "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted). If the moving party meets this initial burden, Fed. R. Civ. P. 56 then obliges the non-moving party to show, via submissions beyond the pleadings, that there are genuine factual issues for trial. Id. at 324.

There is a genuine issue of material fact only when there is sufficient evidence such that a reasonable juror could find for the party opposing the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986) (explaining further that a mere scintilla of evidence will not suffice). Material facts are those that would affect the outcome of the case under the governing law. Id. at 248. We may not make credibility determinations or weigh the evidence, and we must draw all reasonable inferences in favor of the non-moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Amour v. County of Beaver, PA, 271 F.3d 417, 420 (3d Cir. 2001). Our function is to determine whether there is a genuine issue for trial, and we may not prevent a case from reaching a jury simply because we favor one of several reasonable views of the evidence. Abraham v. Raso, 183 F.3d 279, 287 (3d Cir. 1999) (citing Anderson, 477 U.S. at 249).

We will recite the facts as evidenced by the record in the light most favorable to Stone, the non-moving party.

### III.     Factual and Procedural History

Stone began his job as a federal air marshal for the TSA on April 21, 2002.  Stone Aff., Compl. #09-TSA-5764, Sept. 1, 2009.  As an air marshal, Stone's work required him to travel, multiple times a day, in the pressurized cabins of airplanes that would ascend to, and descend from, altitudes as high as 35,000 feet each flight.  Stone Dep. at 9-10.  His duties also necessitated that he see and hear what was taking place on the plane at all times during each flight.  Id.

On April 28, 2005, Stone suffered barotrauma, a severe traumatic injury that causes physical damage to the inner ear, while performing his duties as an air marshal.  Dr. Thomas Wilcox, Stone's treating physician, stated that this incident occurred because Stone suffered from Eustachian tube dysfunction, which "impairs the normal ability of the ear to equalize the air pressure in the closed middle ear space in response to changes in the ambient barometric pressure."  See Wilcox Letter, Mar. 22, 2011, Mot. at Ex. 6.  Stone could no longer perform his duties as an air marshal in the immediate aftermath of this incident as he could no longer fly.  Stone then applied for, and received between 2007 and 2011, Office of Workers' Compensation Programs ("OWCP") benefits.  See Tritz Decl., Mot. at Ex. 2, and Stone Dep. at 47-48.  To support his application, Stone provided the OWCP with a report from Dr. Wilcox that certified Stone suffered from Eustachian tube dysfunction and that Stone could take part in "NO FLYING…forever" without tubes in his ears.  Wilcox Report to OWCP, June 16, 2006, Mot. at Ex. 8.

The TSA removed Stone from his position on August 3, 2007, citing his inability to "perform [his] full time duties as a Federal Air Marshal…due to [his]medical conditions…" TSA Notice of Decision on Proposed Removal, Mot. at Ex. 5.  Stone appealed his removal to the

3

Merit Systems Protection Board ("MSPB") three days later.  See MSPB Docket No. PH-0752-07-0550-I-1.  Stone again submitted a letter from Dr. Wilcox to support his case, with Dr. Wilcox writing in this instance that Stone was "allowed to fly on commercial aircraft as long as either he follows my Fly & Dive instructions or he has tubes placed in his ears.  The Fly & Dive instructions include…using EarPlanes earplugs."  Wilcox Letter, Sept. 11, 2007, Mot. at Ex. 10.  Stone admitted that he could not perform his duties as a federal air marshal while wearing earplugs and that he refused to have the tubes placed in his ears.  See Stone Dep. at 20: 3-25 ("I did not believe I needed [earplugs], and they have very negative side effects…").  This was confirmed at the time by Dr. Wilcox's own notes, where he wrote that he would "not lift [Stone's] 'no fly' status even with reduced flight schedule unless he either follows Fly & Dive and uses EarPlanes ear plugs (which he says he cannot) or has tube (which he refuses)."  Wilcox Notes, Aug. 14, 2007, Mot. at Ex. 9.  Nevertheless, Stone continued with his appeal before the MSRB, and the appeal was subsequently denied.  See Third Amended Compl. at ¶16.

On May 23, 2008, Stone asked the TSA to restore him to his position as a federal air marshal, but his request was denied less than two months later.  TSA Letter, July 11, 2008, Mot. at Ex. 14.  In its letter denying Stone's restoration request, the TSA wrote that Stone was "not fully recovered within the meaning of the regulations," noting that both the Department of Labor and the Office of Law Enforcement /Federal Air Marshal Service ("OLE/FAMS") had concluded that Stone had failed to demonstrate that he had made a full recovery from his medical condition, and said condition prevented him from flying.  Id.  Stone next filed a complaint with the EEOC against the TSA, at which time the TSA presented the opinion of two medical experts who stated that Stone's medical records showed that he was unable to fly.  See Weeks Aff., Oct. 2, 2009, Mot. at Ex. 11, and Lewandowski Aff., Sept. 21, 2009, Mot. at Ex. 12.  The EEOC

issued a decision on the merits of Stone's claim in favor of the TSA on October 8, 2010. Third Amended Compl. at ¶ 31.

In a separate proceeding in 2011, not before us, the OWCP revisited Stone's benefits and it proposed terminating them because it found that Stone had recovered from his barotrauma, even though he was still unable to fly due to the underlying Eustachian tube dysfunction. Stone contested the proposed termination and again enlisted the help of Dr. Wilcox. In his notes from March 9, 2011, Dr. Wilcox wrote that "[t]he question is whether [Stone] could fly again. Certainly, with the tubes in place, he would be at no significant risk of barotrauma. However, without the tubes, there is still some uncertainty." Mot. at Ex. 15. Two weeks later, Dr. Wilcox wrote another letter on Stone's behalf, this time to Thomas R. Uliase, Esq., whom Stone had retained as his compensation benefits counsel. In this letter, Dr. Wilcox stated that "to a reasonable degree of medical certainty…Mr. Stone is not fit to return to work as a Federal Air Marshal." Wilcox Letter, Mar. 22, 2011, Mot. at Ex. 6.

At a hearing on the proposed termination of his OWCP benefits, Stone testified under oath that he could not fly:

> Q: …degree. Okay. All right. So you know, do you feel as though you could go back to the air marshal job where you're flying you know, regularly?
> A: No.
> Q: The job you were doing [as a federal air marshal] when this [medical condition] happened in 2005, do you feel like you can do that now?
> A: No. Because right now from my understanding…they're doing an exuberant amount of flying at this point in time. . .

N.T. 14:3-14 Dec. 6, 2011, Mot. at Ex. 7. The OWCP later found against Stone and discontinued his payments. Mot. at Ex. 17.

5

Stone exhausted his administrative remedies before bringing this suit in 2013. We granted defendant's motion to dismiss, which Stone appealed and our Court of Appeals reversed and remanded. After an extensive period of discovery, the Government now moves for summary judgment.

**IV.   Discussion**

As stated, the Government moves for summary judgment claiming that Stone's claim fails on its face and, in any event, Stone should be judicially estopped from asserting said claim. We address these arguments separately and in turn.

**A.   Retaliation Claim**

The Government first asserts that Stone's Title VII claim for retaliation fails as a matter of law. Title VII provides that it is unlawful for an employer to "discriminate against any of [its] employees or applicants for employment…because [she or he] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing…" 42 U.S.C. § 2000e–3(a). In cases such as this one where a plaintiff has presented a theory of relief based on pretext,[1] our analysis is of course governed by the burden-shifting test outlined in McDonnell Douglas Corp v. Green, 411 U.S. 792 (1973). Under McDonnell Douglas, a plaintiff must establish a prima facie claim for retaliation by showing "(1) [she or he engaged in] protected

---

[1] Plaintiffs may bring claims for retaliation under theories of either "mixed motives" or "pretext." Our Court of Appeals has explained that "whether a plaintiff has presented a pretext or a mixed motives case depends upon the quality of evidence that the plaintiff adduces in support of the claim of illegal discrimination." Walden v. Georgia-Pacific Corp., 126 F.3d 506, 513 (3d Cir. 1997). In order to pursue a mixed motives theory, a plaintiff must proffer evidence that can "fairly be said to directly reflect the alleged unlawful basis for the adverse employment decision." Id. (quoting Hook v. Ernst & Young, 28 F .3d 366, 374 (3d Cir. 1994)). As we find the record here does not contain direct evidence reflecting an unlawful basis for the adverse employment decision against Stone, we will proceed on Stone's claim under a theory of pretext.

6

employee activity; (2) the adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." Daniels v. Sch. Dist. of Philadelphia, 776 F.3d 181, 193 (3d Cir. 2015) (quoting Marra v. Phila. Hous. Auth., 497 F.3d 286, 300 (3d Cir. 2007)). Should a plaintiff establish a prima facie case, the burden shifts to the employer to present a legitimate, non-retaliatory reason for its adverse employment action. Id. If the employer articulates a legitimate, non-retaliatory reason, the burden shifts back to the plaintiff to show that "the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." Marra, 497 F.3d at 300.

Applying that framework to the matter at hand, we must first determine whether Stone has established a prima facie claim for retaliation. The record shows that Stone engaged in a protected activity when he filed an MSPB complaint and suffered an adverse employment action when the TSA denied his request to be restored to his position as a federal air marshal. But there is scant, if any, evidence of a causal connection between Stone's MSPB appeal and the TSA's decision not to restore him to his position as a federal air marshal.

To demonstrate a causal link between a protected activity and an employer's adverse action, a plaintiff may point to temporal proximity between the two if "unusually suggestive." See Daniels, 776 F.3d at 196. Here, there is nothing "unusually suggestive" on which Stone can rely. He appealed his removal on August 6, 2007, and that appeal was denied. In May of 2008 he requested the TSA restore him to his position, and this request was also denied. Eleven months passed between Stone's appeal to the MSPB and the final decision on his request for restoration, and this time period does not suggest retaliation.

7

In the absence of any unusually suggestive temporal proximity, courts must "consider the circumstances as a whole, including any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action." Daniels, 776 F.3d at 196.  The record generated during discovery contains no evidence of any intervening antagonism by the TSA toward Stone.  Stone states in his response that the TSA "engaged in a course of conduct which deviated from its policies, laws, directives and accepted practices and procedures concerning the handling and processing of matters associated with employee on-the-job injuries." Resp. Opp'n Mot. at 5-6.  But he only cites his Third Amended Complaint in support of this assertion – citations to the record are conspicuously absent.  Moreover, Stone can point to no inconsistencies in the TSA's reasons for its refusal to restore his employment.  The TSA's position was consistent throughout both Stone's termination and his restoration proceedings, as it relied upon the opinions of three medical professionals -- one being Stone's treating physician -- who found that Stone was unable to perform his duties as an air marshal due to his medical condition.

It is useful to contrast the case before us with a recent decision from our Court of Appeals.  In Young v. City of Phila. Police Dep't, No. 15-2115, 2016 WL 3101283 (3d Cir. June 3, 2016), the Court found that the plaintiff had presented evidence which allowed one to infer a causal connection between the filing of the complaint and the adverse actions.  There the plaintiff provided evidence of a series of disciplinary actions against him, and asserted that other police recruits were not punished for the same conduct.  Id. at *2-3.  Here, Stone has pointed to no disciplinary actions against, or different treatment from, air marshals who were similarly situated.  In fact, Stone cites no evidence on which a reasonable juror could rely to find a causal

link between the TSA's denial of his restoration request and his previous termination appeal. Thus, we find that Stone has failed to state a prima facie claim for retaliation.

Even assuming that Stone had made such a prima facie claim, the Government has articulated a legitimate, non-retaliatory reason for its refusal to restore Stone to his position as a federal air marshal. Stone has offered no evidence to the contrary to show that the TSA's reason is mere pretext. In its response to Stone's request for reinstatement, the TSA stated that Stone was "not fully recovered within the meaning of the regulations," noting that both the Department of Labor and the OLE/FAMS had concluded that Stone had not demonstrated he had made a full recovery from his medical condition, and said condition prevented him from flying.

As we have found that the Government has proffered a legitimate, non-retaliatory reason for its action, the burden shifts back to Stone to prove that this reason was pretext, and that retaliation was the "but-for" cause of the TSA's refusal to restore him to his previous position. A plaintiff's claim will survive summary judgment only if the plaintiff proffers some evidence, "direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious [retaliatory] reason was more likely than not a ... determinative cause of the employer's action." Daniels, 776 F.3d at 198–99 (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)). Summary judgment would then be inappropriate as the plaintiff will have raised "a factual issue regarding the employer's true motivation for discharge." Jalil v. Avdel Corp., 873 F.2d 701, 707 (3d Cir. 1989). In order to show that an employer's stated reason behind an adverse employment action was "merely a pretext for unlawful retaliation," id. at 306, a plaintiff may point to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them

9

unworthy of credence." Krouse v. American Sterilizer Co., 126 F.3d 494, 504 (3d Cir. 1997) (internal citations and quotations omitted). And, as the Supreme Court recently held in Univ. of Texas SW. Med. Ctr. v. Nassar, 133 S. Ct. 2517 (2013), a plaintiff shows causation at the pretext stage only when providing some evidence that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Id. at 2532. See also Zann Kwan v. Andalex Grp., LLC 737 F.3d 834, 845 (2d Cir. 2013) ("[T]he but-for causation standard does not alter the plaintiff's ability to demonstrate causation at the prima facie stage on summary judgment."); Foster v. Univ. of Md. E. Shore, 787 F.3d 243, 252 (4th Cir. 2015) (holding that Nassar's "but-for" causation standard applies only at the pretext stage and does not alter the causation prong of the prima facie retaliation analysis).

      The record contains no evidence that would lead a factfinder to either believe the TSA's articulated reason for denying Stone's restoration request or conclude that a retaliatory reason was more likely than not the determinative cause of the TSA's action. Stone's own treating physician, Dr. Wilcox, opined that Stone could not fly without either following his Fly and Dive instructions or having tubes placed in his ears. The Fly and Dive instructions included using earplugs, and Stone testified at his deposition that he could not perform his duties as a federal air marshal while wearing ear plugs. Stone also stated that he refused to have tubes placed in his ears because "[he] did not believe [he] needed them, and they have very negative side effects…" Thus, Stone admitted that he cannot meet the requirements for flying his own physician set. Of course, Stone relied upon this same physician to support the proposition that he is medically capable of flying, while also relying upon said physician before the OWCP to show that he was medically incapable of flying. The medical professionals who reviewed Stone's documentation

Case 2:13-cv-03765-SD Document 40 Filed 07/25/16 Page 10 of 13

unworthy of credence." Krouse v. American Sterilizer Co., 126 F.3d 494, 504 (3d Cir. 1997) (internal citations and quotations omitted). And, as the Supreme Court recently held in Univ. of Texas SW. Med. Ctr. v. Nassar, 133 S. Ct. 2517 (2013), a plaintiff shows causation at the pretext stage only when providing some evidence that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Id. at 2532. See also Zann Kwan v. Andalex Grp., LLC 737 F.3d 834, 845 (2d Cir. 2013) ("[T]he but-for causation standard does not alter the plaintiff's ability to demonstrate causation at the prima facie stage on summary judgment."); Foster v. Univ. of Md. E. Shore, 787 F.3d 243, 252 (4th Cir. 2015) (holding that Nassar's "but-for" causation standard applies only at the pretext stage and does not alter the causation prong of the prima facie retaliation analysis).

    The record contains no evidence that would lead a factfinder to either believe the TSA's articulated reason for denying Stone's restoration request or conclude that a retaliatory reason was more likely than not the determinative cause of the TSA's action. Stone's own treating physician, Dr. Wilcox, opined that Stone could not fly without either following his Fly and Dive instructions or having tubes placed in his ears. The Fly and Dive instructions included using earplugs, and Stone testified at his deposition that he could not perform his duties as a federal air marshal while wearing ear plugs. Stone also stated that he refused to have tubes placed in his ears because "[he] did not believe [he] needed them, and they have very negative side effects…" Thus, Stone admitted that he cannot meet the requirements for flying his own physician set. Of course, Stone relied upon this same physician to support the proposition that he is medically capable of flying, while also relying upon said physician before the OWCP to show that he was medically <u>in</u>capable of flying. The medical professionals who reviewed Stone's documentation

on behalf of the TSA also concluded that Stone's medical condition prevented him from serving as a federal air marshal.

Further, Stone was approved for and collected OWCP benefits while simultaneously claiming that he had fully recovered from his medical condition and was fit to fly.  In fact, his application for OWCP benefits included an Affidavit from Dr. Wilcox stating that Stone could take part in "NO FLYING…forever" if he does not have tubes placed in his ears.  This evidence provides even more support for the Government's contention that Stone was medically unable to perform his duties as a federal air marshal.

There is no weakness, inconsistency, or contradiction in the TSA's proffered reason for denying Stone's restoration request.  To the contrary, the Government maintained throughout the entire administrative process that the medical evidence simply did not support Stone's assertion that he was fit to fly.  Since Dr. Wilcox's opinions, Stone's deposition, and Stone's application for OWCP benefits confirm that he was medically unable to fly, it is clear there is no dispute of material fact and the Government is entitled to judgment as a matter of law.

Stone's response to the Government's motion consists of six-pages that cite only his Third Amended Complaint to support his assertion that there is a genuine dispute of material fact.  As stated earlier, if the moving party meets its initial burden of showing that there is no genuine dispute of material fact, Fed. R. Civ. P. 56 then obliges the non-moving party to show, via submissions beyond the pleadings, that there are genuine factual issues for trial.  Celotex Corp., 477 U.S. at 324.  The Government has met its burden by highlighting the medical consensus that Stone was unfit to fly and Stone's recitation of the pleadings therefore necessarily fails.

But even when considering the pleadings, Stone's arguments are either directly contradicted by the record or supported by <u>no</u> evidence. Stone states that he provided medical documentation to support his contention that he made a full medical recovery. But Stone's own treating physician, Dr. Wilcox, stated that Stone could return to flying on commercial aircraft only if he followed the Fly and Dive instructions, which included wearing earplugs, or had tubes put into his ears. Stone admitted that he could not perform his duties as an air marshal while wearing earplugs, and refused to have tubes surgically placed into his ears. Stone also argues that his MSRB appeal by itself should lead us to infer that he had recovered from his compensable injury. This argument, which can be fairly summarized as stating "I appealed, so you should believe me," is an argument we cannot accept. Without providing any supporting evidence, it represents a "mere allegation" that Stone may not rest in order to get to a jury. See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 248-49 (holding that if evidence is merely colorable or not significantly probative a court may grant summary judgment). Stone similarly asserts, while again providing no evidence, that the TSA failed to follow its own proscribed policies and accepted practices when handling Stone's request, and we similarly reject this argument as a mere allegation. Finally, Stone argues that he would have been able to perform his duties as a federal air marshal had the TSA agreed to reduce his number of flights. Even ignoring the fact that Stone has once again proffered no evidence to support his argument, our Court of Appeals has been very clear that the employer, not the employee, determines the appropriate performance criteria for a position. See <u>Simpson v. Kay Jewelers, Div. of Sterling, Inc.</u>, 142 F.3d 639, 347 (3d Cir. 1998).

Thus, we find no evidence of record to support Stone's retaliation claim, and will therefore grant the Government's motion for summary judgment.

### B. <u>Judicial Estoppel</u>

The Government also moves for summary judgment under the theory of judicial estoppel, but having found that Stone's retaliation claim does not survive summary judgment, we need not consider whether Stone should be estopped from asserting said claim.

## V. <u>Conclusion</u>

The record is devoid of any evidence to support Arthur Stone's retaliation claim. We will therefore grant the Government's motion and dismiss Stone's claim with prejudice. An appropriate Order follows.

BY THE COURT:

_/s/ Stewart Dalzell, J.